Filed 5/20/14  In re I.B. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re I.B. et al., Persons Coming Under the Juvenile Court Law. | H040143 (Santa Clara County Super. Ct. Nos. JD21533 & JD21534) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES,<br><br>        Plaintiff and Respondent,<br><br>            v.<br><br>J.A. et al.,<br><br>        Defendants and Appellants. | |

Appellants are the mother and father of two fraternal twins born in October 2012. They each appeal the trial court's denial of their Welfare and Institutions Code section 388[1] petitions made orally at the section 366.26 hearing during which the court terminated their parental rights.

**STATEMENT OF THE FACTS AND CASE**

A.B. and I.B. were born by cesarean-section in October 2012 at 31 weeks gestation.  A.B. weighed two pounds six ounces and I.B. weighed three pounds six ounces.  The twins were placed in the Neonatal Intensive Care Unit.  Mother tested

---

[1] All further statutory references are to the Welfare and Institutions Code.

positive for methamphetamine at the time of the twins' birth, and three other times during her pregnancy. She was uncooperative with hospital staff, and refused drug treatment.

Father was not present at the birth of the twins. Mother stated that Father was not involved, and he was not named on the twins' birth certificates.

The hospital contacted the Santa Clara County Department of Family and Children's Services (Department) in October 2012, to report the abuse and neglect of the twins due to Mother's drug use during pregnancy.

On November 19, 2012, the Department filed petitions pursuant to section 300, subdivisions (b) and (j) on behalf of both children. The petitions alleged the twins were at risk of harm from Mother's chronic and continuing drug abuse; Mother's drug use during her pregnancy; and Mother's older child's prior dependency due to physical abuse by Mother resulting in Mother being charged with child cruelty.

The juvenile court ordered the twins detained on November 26, 2012. Father's identity had been revealed and he was present at the detention hearing because he was in custody due to drug-related charged. The court ordered paternity testing, which confirmed that he was the biological father.

Father filed a statement of parentage, and requested presumed father status. The court conducted an evidentiary hearing, and denied Father's motion for presumed father status. Father filed a notice of appeal, and this court affirmed the juvenile court. (*In re I.B., et al.; D.F.C.S v. M.B.* (Oct. 21, 2013, H039359) [nonpub. opn.].)

I.B. was discharged from the hospital on November 30, 2012 and A.B. was discharged on December 5, 2012. Both children were placed together in a foster home.

The Department filed a second set of section 300 petitions, and the jurisdiction hearing was held on February 21, 2013. The court sustained the petitions. In addition to finding the allegations regarding Mother's drug abuse during pregnancy and the harm it

2

caused the twins, the court also found Father was a registered narcotics offender, and his substance abuse would place the twins at risk of harm in his care.

On March 21, 2013, the twins were placed in a non-relative prospective adoptive home. The prospective adoptive parents were committed to adopting the children.

On March 29, 2013, the court held a contested disposition hearing. The Department recommended that reunification services he denied to both Mother and Father. On April 4, 2013, the court ordered that reunification services be bypassed for Mother, and not provided for Father. The court also ordered supervised visitation for the parents for a minimum of one time per month for an hour. The court set the matter for a section 366.26 hearing.

In preparation for the section 366.26 hearing, the Department recommended termination of parental rights, and adoption of the twins as the permanent plan. Mother and Father opposed the recommendation, and requested a trial.

The court held the contested section 366.26 hearing on August 26, 2013. The twins were 10-months old, and had been living with their prospective adoptive parents for five months.

Both Mother and Father testified at the hearing. The court permitted counsel for both Mother and Father to question them about what efforts they had made to change their lives during the section 366.26 hearing. This was over counsel for the Department's objection that such testimony was irrelevant for the purposes of a section 366.26 hearing. At the conclusion of the section 366.26 hearing, both counsel for Mother and Father argued the court should order reunification services for Mother and Father. After taking the matter under submission, the court ultimately summarily denied the oral section 388 petition on the ground that it was not a formal request to change a court order pursuant to California Rules of Court, rule 5.570, did not give notice, and there was no good cause to deviate from the procedural requirement.

3

The court terminated parental rights, and found by clear and convincing evidence that the twins were likely to be adopted.

Mother and Father filed timely notices of appeal.

## DISCUSSION

Mother and Father assert the court erred in summarily denying their section 388 petitions made orally during the section 366.26 hearing. They argue they made a prima facie showing of changed circumstances in their oral petition, and therefore, were entitled to a full hearing on the section 388 petition.

In addition, Mother and Father argue the court's reasoning in summarily denying their section 388 petition was flawed because it was based on their failure to submit the petitions on the proper judicial council forms. (Cal. Rules of Court, rule 5.570(b).) They assert section 388 only requires that the petition be verified, which was satisfied by Mother and Father's sworn testimony at the section 366.26 hearing.

On appeal, we only consider the fact that the court summarily denied the section 388 petition. The juvenile court's reasoning is not a matter for our review. (*Davey v. Southern Pac. Co.* (1897) 116 Cal. 325, 329.) It is judicial action not judicial reasoning which is the proper subject of appellate review. (*El Centro Grain Co. v. Bank of Italy, Etc.* (1932) 123 Cal.App. 564, 567.)

### *Propriety of Oral Section 388 Petitions*

The Department objected to the court considering Mother and Father's oral section 388 petitions during the section 366.26 hearing. Minors' counsel also objected, however, for the sake of efficiency, she asked the court to consider the motion and deny it.

The dependency statutory scheme does not contemplate oral petitions pursuant to section 388. (§§ 300, et seq.) Indeed, the court is not required to entertain an oral motion under section 388 at the time set for the 366.26 hearing. The California Supreme Court has stated that If there were such a requirement, "there would be nothing to preclude a

4

parent from appearing at a section 366.26 hearing and, without prior notice to the court and other parties, assert a meritless claim of changed circumstances necessitating a delay of the hearing to allow the court to determine whether there is sufficient evidence to hold a hearing on the issue and to allow the other parties time to respond.  After resolution of the issue raised, another such claim conceivably could be raised at the next section 366.26 hearing.  This could result in lengthy and unnecessary delay in providing permanency for children, the very evil the Legislature intended to correct." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.)

While the court is not required to consider an oral section 388 petition, it is not precluded from doing so.  Here, the court allowed Mother and Father to testify to what efforts they had made toward changing their lives up until that point.  Additionally, the court also permitted Mother and Father to argue that they should be provided reunification services.  The court summarily denied the oral petition.

We review the juvenile court's summary denial of a section 388 petition for an abuse of discretion.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316-318; *In re Angel B.* (2002) 97 Cal.App.4th 454, 460.)  "We must uphold the juvenile court's denial of appellant's section 388 petition unless we can determine from the record that its decision[] " 'exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." [Citations.]' " (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.)

*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250, described what must be shown to warrant a hearing on a section 388 petition:  "The parent seeking modification must 'make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]' (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1412-1414.)  There are two parts to the prima facie showing:  The

5

parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529.) If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the dependency court need not order a hearing. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)"

### *Mother and Father's Oral Section 388 Petitions*

Mother's petition consisted of only her testimony at the section 366.26 hearing; she did not file a verified petition. There was no supplemental documentary evidence presented. At the hearing, Mother testified that she had a 12-step sponsor named Danielle, and that she attended 12-step meetings once a week, however, she provided no substantiation for these claims. Mother also testified that she completed a 45-day stay at Mariposa Lodge for drug treatment, and she was provided a sober living arrangement after she was released, but left after a week. All of this information was available before the disposition hearing, and was not evidence of changed circumstances.

In addition, Mother testified that after she left the sober living environment, she moved to Lupin Lodge,[2] which she described as a "zero-tolerance community." There, Mother received help for her problems from a "counselor." While at Lupin Lodge, Mother had a job as the head chef. Mother was committed to remaining sober and wanted an opportunity to be a parent to her twins.

Like Mother, Father's only evidence was his testimony at the hearing. He stated that while he was in custody between November 2012 and March 2013, he attended a 90-

---

[2] In its response brief, the Department states that Lupin Lodge is not described as a sober living environment on its website <www.lupinlodge.com>. Rather, it is a clothing optional recreational facility at which alcoholic beverages may not be taken to the swimming pool, spa or sauna.

day treatment program. This evidence was available at the time of the disposition hearing, and did not demonstrate changed circumstances.

Additionally, Father stated that he was tested for drugs by his employer, and the result was negative. Father did not provide any substantiation for this representation.

Neither Mother nor Father showed through their testimony "that [their] circumstances [had] changed sufficiently to justify a change in the court's orders." (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 607-608.) Once the court determined that a permanent plan was appropriate in this case, a petition showing that the parents are beginning to rehabilitate or to change their lives is not enough to require a hearing. (See *id*. at p. 610.)

Moreover, there was nothing in Mother or Father's testimony that showed that the proposed change of order would be in the twins' best interests. "[S]ection 388 makes clear that the hearing is only to be held if it appears that the best interests of the child may be promoted by the proposed change of order, which necessarily contemplates that a court need not order a hearing if this element is absent from the showing made by the petition." (*In re Zachary G*., supra, 77 Cal.App.4th at p. 807, fn. omitted; see also *In re Kimberly F., supra*, 56 Cal.App.4th at p. 529 ["It is not enough for a parent to show *just* a genuine change of circumstances under the statute. The parent must show that the undoing of the prior order would be in the best interests of the child."].) Although the specific factors considered in determining what is in the best interests of the child may vary from case to case, "each child's best interests would necessarily involve eliminating the specific factors which required placement outside the parent's home." (*In re Heather P.* (1989) 209 Cal.App.3d 886, 892.)

Here, neither Mother nor Father had much of a relationship with the 10-month-old twins since their birth when they were removed. Father testified that he had visited with the twins five or six times during their lives for a total of 10 hours. Mother stated that she

7

had visited with the twins eight times for a total of 16 hours.  Conversely, there was evidence that the twins were bonded with their prospective adoptive parents, with whom they were comfortable.  There was nothing offered through Mother or Father's testimony demonstrating that a change in the court's order would be in the twins' best interests.

Under these circumstances, the juvenile court did not abuse its discretion in summarily denying Mother and Father's oral section 388 petitions.  Neither parent met their burden to establish a prima facie case that there were adequate changed circumstances to justify a modification of the court's order, nor did they show that a change would be in the twins' best interests.

**DISPOSITION**

The order from which this appeal is taken is affirmed.

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

ELIA, J.